**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION**

| | |
|---|---|
| **GERARD VAN DEN BOSCH**, <br> *on behalf of himself and all others similarly situated* <br><br> *Plaintiff,* <br><br> v. <br><br> **JOSEPH BIDEN, JR., in his official capacity as the President of the United States;** <br><br> **ROCHELLE WALENSKY, in her official capacity as the Director of the Centers for Disease Control;** <br><br> **THE CENTERS FOR DISEASE CONTROL AND PREVENTION;** <br><br> **ALEJANDRO MAYORKAS, in his official capacity as the Secretary of the Department of Homeland Security;** <br><br> **TROY A. MILLER, in his official capacity as Commissioner of the U.S. Customs and Border Protection; and** <br><br> **THE UNITED STATES OF AMERICA** <br><br> *Defendants.* | Case No. _____ |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The issues presented to this Court are whether Presidential Proclamation 10294 (the "**Proclamation**")[1] and the Centers for Disease Control and Prevention ("**CDC**")'s Implementing

---

[1] *See* THE WHITE HOUSE, *A Proclamation on Advancing the Safe Resumption of Global Travel During the COVID-19 Pandemic,* Oct. 25, 2021, *available at* https://www.whitehouse.gov/briefing-room/presidential-actions/2021/10/25/a-proclamation-on-

1

Orders[2] and Guidance[3] (collectively these CDC orders and guidance are denoted as "**the Travel Ban**"), which places comprehensive travel restrictions on unvaccinated non-citizens and non-residents of the U.S., violates the Religious Freedom Restoration Act of 1993 ("**RFRA**"), the First Amendment of the United States Constitution, and whether the delegation by President Joseph R. Biden, Jr. ("**President Biden**") was an unauthorized and illegal delegation to the CDC, which, in turn, renders the CDC's Implementing Orders and Guidance invalid under the Administrative Procedure Act.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a), 1346, and 1361 because this action arises under the U.S. Constitution, the Religious Freedom Restoration Act ("**RFRA**"), the Administrative Procedure Act ("**APA**"), the Declaratory Judgment Act ("**DJA**") and other Federal statutes.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1)(c) because this action is brought against officers of the United States, Plaintiff resides in this District, and no real property is involved.

---

advancing-the-safe-resumption-of-global-travel-during-the-covid-19-pandemic/ (last accessed 4/3/2023).

[2] *See* 87 FR 20405 *available at* https://www.cdc.gov/quarantine/pdf/CDC-Vaccine-Order-04-04-2022-p.pdf (last accessed 4/3/2023).

[3] *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *Technical Instructions for Implementing Presidential Proclamation Advancing Safe Resumption of Global Travel During the COVID-19 Pandemic, available at* https://www.cdc.gov/quarantine/order-safe-travel/technical-instructions.html (last accessed 4/3/2023). Courts can take judicial notice of the contents of a government website. *See e.g., Oak Ridge Envt'l. Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D.TN. 2019) ("Information taken from government websites is self-authenticating under FED. R. EVID. 902, and courts may accordingly take judicial notice of the information found on these websites.") (Citations omitted).

2

3. This Court has the authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, implemented through Rule 57, Federal Rules of Civil Procedure. And it has the authority to render the relief provided by the APA pursuant to 5 U.S.C. § 702, *et. seq.*

## PARTIES

### A. Plaintiff

4. Plaintiff Gerard van den Bosch ("**Plaintiff**") is a citizen of the Netherlands and lawfully resides in Maury County, Tennessee. He is a non-citizen nonimmigrant who was granted an E2 Work Visa on March 1, 2019. He moved to the United States in 2019 and has been working for VMI Holland BV ("**VMI Holland**") in the United States as a Project Support Engineer.

5. Plaintiff possesses sincere religious beliefs that preclude him from receiving a COVID-19 vaccine. He also possesses natural immunity to COVID-19. Although he has resided in the United States throughout the pandemic while unvaccinated, he is ineligible to travel home to his aging parents and to further his career and then re-enter the United States because his religious beliefs preclude him from receiving a vaccine.

6. Mr. van den Bosch has not returned to the Netherlands since moving to the United States in 2019, despite needing to return for personal and professional reasons. For example, it was essential for him to travel to the Netherlands for a business meeting on March 17, 2023. Accordingly, he booked a flight and repeatedly requested a religious exemption to the Travel Ban to various government entities. Although he has attempted through multiple channels to get an answer, he never received an official response to his religious exemption request, even though it

is clear from the plain language of the Travel Ban and the CDC's own website instructs that religious exemptions are not available.[4]

7.     Plaintiff also desires to see his parents and family for his parents' 40th wedding anniversary on June 5, 2023. Accordingly, he booked another round-trip flight to the Netherlands, departing from Nashville on May 24, 2023 and returning to the United States on June 24, 2023.

**B.    Defendants**

8.     Defendant Joseph R. Biden, Jr., is President of the United States. He issued the October 25, 2021 Proclamation, directing the CDC to take measures dictating that non-citizen nonimmigrants who have not been vaccinated against COVID-19 are ineligible for entry into the United States.

9.     The CDC is a federal agency under the Department of Health and Human Services. The CDC is responsible for implementing and enforcing and does implement and enforce the requirements of the Travel Ban.

10.     Defendant Director Rochelle Walensky is sued in her official capacity as the Director of the CDC. Director Walensky is tasked with implementing and enforcing and does implement and enforce the requirements of the Travel Ban, and, further, has issued the Challenged Order.

11.     Defendant Alejandro Mayorkas is sued in his official capacity as the Secretary of the DHS. Secretary Mayorkas is responsible for implementing and enforcing and does implement and enforce the requirements of the Travel Ban.

---

[4] *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *Requirements for Proof of COVID-19 Vaccination for Air Passengers*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/travelers/proof-of-vaccination.html (explaining that "there are no exceptions under the Presidential Proclamation and CDC's Amended Order for religious reasons or other moral convictions") (last accessed 4/3/2023).

4

12.     Defendant Troy A. Miller is sued in his official capacity as the Acting Commissioner of the U.S. Customs and Border Protection ("**CPB**"). Commissioner Miller is responsible for implementing and enforcing and does implement and enforce the requirements of the Travel Ban.

13.     Defendant United States of America includes all government agencies and departments responsible for the implementation and enforcement of the Travel Ban.

## STATEMENT OF COMMON FACTS

### A.  General Background

14.     In December 2019, a cluster of patients in the city of Wuhan, China were reported to have experienced the symptoms of an atypical pneumonia-like illness, subsequently designated as Severe Acute Respiratory Syndrome Coronavirus 2 ("**SARS-CoV-2**").

15.     The disease that SARS-CoV-2 causes has been commonly referred to as COVID-19.  In February and March of 2020, the World Health Organization (**"WHO"**) and governments across the world made formal emergency declarations regarding COVID-19.

16.     On March 16, 2020, Dr. Anthony Fauci publicly announced that in states "with evidence of community transmission, bars, restaurants, food courts, gyms and other indoor and outdoor venues where groups of people congregate should be closed." The March 16, 2020 national decree has since been commonly referred to as the "15-days-to-slow-the-spread" announcement.[5]

17.     In record time after the COVID-19 outbreak was formally announced, novel vaccines received emergency use authorization by the Food and Drug Administration (the "**FDA**").

---

[5] *See, e.g.,* TRUMP WHITEHOUSE ARCHIVES, *available at* https://trumpwhitehouse.archives.gov/articles/15-days-slow-spread/ (last accessed 4/3/2023).

The first, the Pfizer-BioNTech COVID-19 vaccine, received Emergency Use Authorization on or around December 11, 2020.

18.    Some ten months later, on October 25, 2021, President Biden issued the Proclamation, decreeing that most all non-citizen nonimmigrants were prohibited from entering the country unless they were vaccinated against COVID-19.

19.    On October 30, 2021, the CDC issued its first order implementing the Proclamation.

20.    Soon thereafter, the CDC issued Technical Instructions for implementing the Proclamation.[6]

21.    On April 4, 2022, the CDC amended its October 30, 2021 Order; this April 4, 2022 Order continued restrictions on entry for non-U.S. citizens who are nonimmigrants seeking to enter the United States by air travel and who are not fully vaccinated against COVID-19.  That April 4, 2022 Order was published in the Federal Register at 87 FR 20405 and is available at https://www.cdc.gov/quarantine/pdf/CDC-Vaccine-Order-04-04-2022-p.pdf (last accessed 4/3/2023) (we have denoted this as the "**Challenged Order**").  The Challenged Order incorporates certain provisions of the Technical Instructions.

22.    On September 18, 2022, President Biden announced that "the pandemic is over."[7]

---

[6] *See* CENTERS FOR DISEASE CONTROL, *Technical Instructions for Implementing Presidential Proclamation Advancing Safe Resumption of Global Travel During the COVID-19 Pandemic, available at https://www.cdc.gov/quarantine/order-safe-travel/technical-instructions.html* (last accessed 4/3/2023).

[7] *See* 60 MINUTES (September 19, 2022), *President Biden Says "The Pandemic is over", available at* https://www.youtube.com/watch?v=MIQz0fsX3U (last accessed 4/3/2023).

6

23.     A couple months later, when questioned when he would formally declare an end to the COVID-19 emergency, President Biden clarified that "the emergency will end when the Supreme Court ends it."[8]

**B. The Challenged Order and Guidance**

24.     The Challenged Order places a travel ban on unvaccinated non-citizen nonimmigrants seeking entry to the country, though permits a number of secular exemptions.

25.     The Proclamation cites three key authorities to support the President's delegation of power to the CDC Director—8 U.S.C.§§1182(f) and 1185(a), and 3 U.S.C. §301, each of which are recited in the Challenged Order.

26.     3 U.S.C. § 301, states in relevant part:

> The President of the United States is authorized to designate and empower the head of any department or agency in the executive branch, or any official thereof **who is required to be appointed by and with the advice and consent of the Senate**, to perform without approval, ratification, or other action by the President (1) any function which is vested in the President by law, or (2) any function which such officer is required or authorized by law to perform only with or subject to the approval, ratification, or other action of the President

(Emphasis added).

27.     The CDC Director is not a position "appointed by and with the advice and consent of the Senate."

28.     In contravention of 3 U.S.C. § 301, the Proclamation delegates to the CDC Director all authority to implement and oversee the requirements of the Proclamation, stating in relevant part:

---

[8] *See* THE WHITE HOUSE, *Remarks by President Biden Before Marine One Departure, available at* https://www.whitehouse.gov/briefing-room/speeches-remarks/2023/01/31/remarks-by-president-biden-before-marine-one-departure-28/ (last accessed 4/3/2023).

The Secretary of Health and Human Services, **through the Director of the CDC**, shall implement this proclamation as it applies to the public health through such procedures as may be established, and **consistent with the CDC's independent public health judgment** . . . .[9]

29. "As determined by the CDC Director" or some variation of the CDC Director's discretionary authority appears 26 times throughout the Proclamation, while the Secretary of HHS is mentioned only twice.

30. Further evidencing that the implementation of the Proclamation has been delegated to the CDC Director includes the March 1, 2023, response that Plaintiff received to his request for a religious exemption to Customs and Border Protection ("**CPB**") unit at John F. Kennedy Airport. CBP Officer Gaitree Chan instructed the Plaintiff to "[p]lease contact the CDC as CBP is not handling such requests." *See* Exhibit 1, Customs and Border Protection E-mail to Plaintiff's Legal Counsel.

31. As it turns out, the CDC has developed a comprehensive form for its implementation of the Challenged Order, outlining the significant number of discretionary exemptions from the Challenged Order, but not permitting any religious exemptions. *See* Exhibit 2, CDC Exemption Form.

32. "Fully Vaccinated" under the Challenged Order means: (a) 2 weeks (14 days) since a person received one dose of an accepted single-dose-series COVID-19 vaccine (e.g., Janssen/J&J); or (b) 2 weeks (14 days) since a person's second dose in a 2-dose series of an accepted COVID-19 vaccine; or (c) 2 weeks (14 days) since a person received the full series of an

---

[9] *See* THE WHITE HOUSE, *A Proclamation on Advancing the Safe Resumption of Global Travel During the COVID-19 Pandemic,* Oct. 25, 2021, *available at* https://www.whitehouse.gov/briefing-room/presidential-actions/2021/10/25/a-proclamation-on-advancing-the-safe-resumption-of-global-travel-during-the-covid-19-pandemic/ (last accessed 4/3/2023) (emphasis added).

8

accepted COVID-19 vaccine (not placebo) in a clinical trial; (d) 2 weeks (14 days) since the person received 2 doses of certain "mix-and-match" combinations of accepted COVID-19 vaccines administered at least 17 days apart.

33.    The available vaccines have proven to be disastrously ineffective at preventing infection or transmission. They have also demonstrated inefficacy at providing non-transient protection against severe illness, hospitalization, and death.

34.    Unsurprisingly, considering this documented and glaring inefficacy, the CDC strongly recommends booster shots and recommends that everyone stay up to date with boosters, which, depending on one's age group, could encompass receipt of up to five vaccines (with no end in sight).[10]

35.    Nonetheless, despite demonstrated vaccine inefficacy and the CDC's consequent strong recommendation for up-to-date boosters, the Travel Ban inexplicably does not require boosters. A noncitizen nonimmigrant who was vaccinated in December of 2020, but not boosted, is eligible for entry under the Travel Ban's requirements, but Plaintiff, who possesses natural immunity, is not.

36.    The United States—notwithstanding its relatively high vaccination rates—has throughout the pandemic, including after the Challenged Order—recorded some of the highest infection and COVID-19 related hospitalization rates in the world.

37.    Countries with relatively lower vaccination rates than the United States have consistently recorded lower infection rates and COVID-19 related hospitalization rates.

---

[10] *See* CENTERS FOR DISEASE CONTROL, *Frequently Asked Questions About COVID-19 Vaccination, available at* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html?s_cid=11747:cdc%20fully%20vaccinated%20definition:sem.ga:p:RG:GM:gen:PTN:FY22 (last accessed 4/3/2023).

9

38. COVID-19 does not differentiate between persons based on their immigration status, and spreads just as readily amongst citizens and non-citizens alike. However, the Travel Ban does not apply to "U.S. citizens, U.S. nationals, U.S. lawful permanent residents, or immigrants." It only applies to non-citizen and non-resident nonimmigrants.

39. Additionally, the Travel Ban only applies to some non-citizen and non-resident nonimmigrants, but not to others. Notably, undocumented immigrants who seek asylum or who unlawfully cross the United States' border and take up residence in the United States are not subject to any restrictions based on their vaccination status. While the estimated number of undocumented immigrants residing in the United States widely varies, some of the more conservative estimates are that between 10.5 million[11] and 11.96 million[12] undocumented immigrants have crossed the border illegally and now reside in the United States. The number of undocumented immigrant crossings at the southwest border for fiscal year 2022 alone topped 2.76 million, breaking the previous annual record by more than 1 million, according to Customs and Border Protection data.[13]

40. The Travel Ban also does not apply to non-citizen nonimmigrants who are "air crew members," provided such crewmembers and operators adhere to all "industry standard protocols" as set forth by the CDC.

41. Moreover, the Travel Ban permits an extensive list of possible secular exemptions.

---

[11] *See* PEW RESEARCH CENTER, *Measuring Illegal Immigration*, *available at* https://www.pewresearch.org/fact-tank/2019/07/12/how-pew-research-center-counts-unauthorized-immigrants-in-us/ (last accessed 4/3/2023).

[12] *See* DEPARTMENT OF HOMELAND SECURITY, *Population Estimates, Illegal Alien Population Residing in the United States*, *available at* https://www.dhs.gov/sites/default/files/publications/18_1214_PLCY_pops-est-report.pdf. (Last accessed 4/3/2023).

[13] *See* U.S. CUSTOMS AND BORDER PROTECTION, *CBP Enforcement Statistics Fiscal Year 2023*, *available at* https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics (last accessed 4/3/2023).

10

### C. The Travel Ban's Discretionary Exemption Scheme

42. The Proclamation and Challenged Order's overriding justification is to "limit the risk that COVID-19, including variants of the virus that causes COVID-19, is introduced, transmitted, and spread into and throughout the United States."

43. However, the Travel Ban permits a long list of possible secular-based exemptions to the general travel ban for unvaccinated non-citizens and non-resident nonimmigrants.

44. These exemptions are to be determined at the sole discretion of government officials.

45. The menu of available exemptions include:

    i.     any noncitizen seeking entry into or transiting the United States pursuant to one of the following nonimmigrant visa classifications: A-1, A-2, C-2, C-3 (as a foreign government official or immediate family member of an official), E-1, G-1, G-2, G-3, G-4, NATO-1 through NATO-4, or NATO-6 (or seeking to enter as a nonimmigrant in one of those NATO classifications);

    ii.     any noncitizen whose travel falls within the scope of section 11 of the United Nations Headquarters Agreement or who is traveling pursuant to United States legal obligation (as evidenced by a letter of invitation from the United Nations or other documentation showing the purpose of such travel);

    iii.     any noncitizen for whom, given their age, requiring vaccination would be inappropriate, as determined by the Director of the CDC;

    iv.     any noncitizen who has participated or is participating in certain clinical trials for COVID-19 vaccination, as determined by the Director of the CDC;

11

v. any noncitizen for whom accepted COVID-19 vaccination is medically contraindicated, as determined by the Director of the CDC;

vi. any noncitizen who has been granted an exception by the Director of the CDC for humanitarian or emergency reasons, as determined by the Director of the CDC;

vii. any noncitizen who is a citizen of a foreign country where the availability of COVID-19 vaccination is limited, and who seeks to enter the United States pursuant to certain nonimmigrant visas categories;

viii. any noncitizen who is a member of the United States Armed Forces or who is a spouse or child of a member of the United States Armed Forces;

ix. any noncitizen seeking entry as a sea crew member traveling pursuant to a C-1 and D nonimmigrant visa, if such crew member adheres to all industry standard protocols for the prevention of COVID-19, as set forth in relevant guidance for crew member health by the CDC; and

x. any noncitizen or group of noncitizens whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Transportation, the Secretary of Homeland Security, or their designees.[14]

46. Pursuant to the Challenged Order and CDC's Implementing Guidance, those qualifying for any of the above exemptions must agree to be vaccinated within 60 days of arriving

---

[14] *See* Advancing the Safe Resumption of Global Travel During the COVID-19 Pandemic, 86 Fed. Reg. 59603 at §3, *available at* https://www.federalregister.gov/documents/2021/10/28/2021-23645/advancing-the-safe-resumption-of-global-travel-during-the-covid-19-pandemic (last accessed 4/3/2023).

12

in the United States, *but* there are also series of available exemptions to this requirement, including, *inter alia*, if:

      i.    the noncitizen's intended stay is "sufficiently brief," as determined by the Director of the CDC;

     ii.    the noncitizen is one for whom, given their age, requiring vaccination would be inappropriate, as determined by the Director of the CDC;

    iii.    the noncitizen has participated or is participating in certain clinical trials for COVID-19 vaccination, as determined by the Director of the CDC;

    iv.    COVID-19 vaccination is medically contraindicated for the noncitizen, as determined by the Director of the CDC; and

     v.    if the Director of the CDC otherwise determines that COVID-19 vaccination is not warranted for the noncitizen.

47.    The Challenged Order and Implementing Guidance also allows individuals subject to the Travel Ban to delay receiving a COVID-19 vaccine upon entry. The Director of the CDC also possesses authority to extend the 60-day timeframe for any amount of time she determines.

48.    The Challenged Order and the Implementing Guidance also does not apply to "other non-affected persons," which includes non-U.S. citizens eligible for asylum, withholding of removal, or for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, refugees, and non-U.S. citizens granted parole into the United States.[15]

49.    Notably, all possible exemptions are based on secular justifications. There is no religious exemption available.

---

[15] *See* CDC, *supra* note 4.

**D. Changed Circumstances Since the Challenged Order was Issued—the Available Vaccines do not Prevent Transmission or Infection**

50.     Even if the Challenged Order could have been justified at the time of its issuance, changed circumstances and recent data render the vaccine mandate manifestly irrational.

51.     Simply put, the available vaccines do not prevent infection or transmission of COVID-19.

52.     In fact, even before the Challenged Order had been issued, it was already clear that the available vaccines had become ineffective against preventing infection and transmission of COVID-19.

53.     On March 29, 2021, Director Walensky instructed the public that the CDC's own data "suggest . . . that vaccinated people do not carry the virus, don't get sick, and that it's not just in the clinical trials but it's also in real world data."[16]

54.     However, because the real-world data had already demonstrated breakthrough infections in those vaccinated just three months after the Pfizer-BioNTech vaccine received FDA approval, the CDC immediately thereafter reversed course and clarified Director Walensky's statements: "It's possible that some people who are fully vaccinated could get COVID-19." [17]

---

[16] *See* MSNBC, *Statement from CDC Director Rochelle P. Walensky, MD, MPH on* Rachel Maddow Show (March 29, 2021), *transcript available at* https://www.msnbc.com/transcripts/transcript-rachel-maddow-show-3-29-21-n1262442?utm_content= (last accessed 4/3/2023).

[17] *See* THE HILL, *"CDC Reverses Statement by Director",* (April 2, 2021), *available at* https://thehill.com/changing-america/well-being/546234-cdc-reverses-statement-by-director-that-vaccinated-people-are-no/ (last accessed 4/3/2023).

55. A few months later in July 2021, Director Walensky admitted that the vaccinated had similarly high viral loads of SARS-CoV-2 as the unvaccinated and thus could still contract and spread the Delta variant.[18]

56. In August 2021, a joint study by the CDC and the Wisconsin Department of Health services further confirmed Director Walensky's statement regarding the fact that vaccinated individuals were carrying high viral loads. In fact, the study indicated that vaccinated individuals had a 5% *higher viral load* than the unvaccinated and therefore indicating vaccinated individuals were not only just as likely to transmit the virus as the unvaccinated, but more likely.[19]

57. For more than two years now, it has been clear that the available COVID-19 vaccines are incapable of stopping infection or transmission. At best, the available vaccines may provide an undefined level of personal protection.

58. Notably, it has been widely reported that Defendants President Biden and Director Walensky, both of whom are fully vaccinated and boosted, have contracted COVID-19 multiple times.[20]

---

[18] *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, CDC News Room, *Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR*, CDC News Room (July 30, 2021) *available at* https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html ("Today, some of those data were published in CDC's Morbidity and Mortality Weekly Report (MMWR), demonstrating that Delta infection resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people. High viral loads suggest an increased risk of transmission and raised concern that, unlike with other variants, vaccinated people infected with Delta can transmit the virus.").

[19] *See* Kasen Riemersma, *et. al*, *Shedding of Infectious SARS-CoV-2 Despite Vaccination* medRxiv (August 24, 2021), *available at* https://www.medrxiv.org/content/10.1101/2021.07.31.21261387v4.full.pdf (last accessed 4/3/2023).

[20] *See, e.g., President Joe Biden tests positive for Covid-19 again, available at* https://www.cnn.com/2022/07/30/politics/joe-biden-covid-19-positive/index.html*; see also,* CENTERS FOR DISEASE CONTROL, *Director Tests Positive for COVID-19, available at* https://www.cdc.gov/media/releases/2022/s1022-covid-director.html#:~:text=Last%20night%2C%20CDC%20Director%20Dr,to%20date%20with%20h

15

59.    Further, the Travel Ban also does not require that non-citizens receive COVID-19 booster injections, despite the fact that the CDC recommended boosters for all adults as early as November 2021.[21]

60.    Consistent with the above, on August 11, 2022, the CDC released updated guidance indicating: (i) COVID-19 vaccines provide a lesser degree of protection against asymptomatic and mild infection; (ii) receiving only the primary series of the COVID-19 vaccine (which is what the Challenged Order requires) provides only minimal protection against infection and transmission in the absence of booster doses; (iii) even receiving all updated COVID-19 vaccines (and boosters) provides only a transient period of protection that will wane over time; and, notably, that (iv) **differentiation between vaccinated and unvaccinated persons for non-pharmaceutical interventions is no longer recommended** due to breakthrough infections among vaccinated persons and natural immunity among unvaccinated persons who have been infected with COVID-19.[22]

61.    CDC guidance now directly contradicts the rationales and implicit justifications for the Travel Ban.

---

er%20vaccines ("Last night, CDC Director Dr. Rochelle Walensky tested positive for COVID-19. She is up to date with her vaccines.") (Last accessed 4/3/2023).

[21] *See* CENTERS FOR DISEASE CONTROL, *CDC Guidance on COVID-19 Boosters*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/booster-shot.html (last accessed 4/3/2023).

[22] *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *Summary Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems—United States* (Aug. 2022), *available at* https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm?s_cid=mm7133e1_x (last accessed 4/3/2023).

62. Every country in Europe permits unvaccinated non-citizens to travel freely. Canada and Mexico permit unvaccinated foreigners to travel without showing proof of vaccination, and so does China.

63. The United States is amongst the handful of remaining countries that maintain travel restrictions based on vaccination status, a very short list of countries that includes some of the most repressive governments in the world.

**E. Because of the Travel Ban's Requirements, and Because of His Sincere Religious Beliefs that Preclude him from Receiving a COVID-19 Vaccine, Plaintiff Cannot Enter the United States Under His Validly Issued E2 Visa.**

64. Plaintiff was last in his home country (the Netherlands) on April 15, 2019.

65. Due to prior infection, Plaintiff possesses natural immunity against COVID-19.

66. Plaintiff holds sincere religious beliefs that preclude him from receiving a COVID-19 vaccine. Plaintiff, his wife, and his three children have not received a COVID-19 vaccine.

67. Plaintiff has also submitted religious exemptions for his unvaccinated children to attend school.

68. Plaintiff has three independent religious objections to receiving a COVID-19 vaccine. First, he is convicted that God made humans with a "perfect" design, and with a miraculous immune system that is capable of protecting him from threats. *See* Exhibit 3, Gerard van den Bosch Religious Exemption Statement. In his system of religious beliefs, "injecting [an] unnatural virus" directly into his body would be to bypass "the filtering system that God" created, and therefore would "go against God's design for our body", which Plaintiff views as being the Temple of God. *Id.* Second, Plaintiff objects to abortion on religious grounds and cannot participate in activities he views as too closely connected with abortion. In his system of religious

17

beliefs, "any vaccine which is made or developed based on a fetal cell line is evil and against Gods [sic] will." *Id.* It is Plaintiff's understanding that the available COVID-19 vaccines were all created by using aborted fetal cell lines. *Id.* Third, considering the above, Plaintiff has chosen not to become vaccinated against COVID-19 because he believes that it would violate his religious convictions and to override his firmly convictions would be to give into fear and would demonstrate a "lack of faith in God." *Id.*

69.     Plaintiff also possesses religious beliefs that he must provide for his family.

70.     Plaintiff's close family resides in the Netherlands.

71.     Plaintiff moved to the Nashville, Tennessee area in 2019 for his job with VMI Holland, where he works as a Project Support Engineer.

72.     Plaintiff desires and intends, for multiple reasons, to return to the Netherlands and then re-enter the United States under his validly issued E2 visa so he can maintain his career.

73.     Due to the Travel Ban's requirements, Plaintiff has been unable to travel home for numerous major life events in his family.  He has missed birthdays, including his mother's 60th, Christmases, and other major life events of direct family members.

74.     Plaintiffs' mother and three sisters also have not received a COVID-19 vaccine and are therefore ineligible under the Travel Ban to enter the United States to visit Plaintiff.

75.     Plaintiff desires to return home to his parents' 40-year wedding anniversary on June 5, 2023.  He has booked a round trip plane flight to return home to the Netherlands for his parents' anniversary, leaving Nashville on May 24, 2023, and returning to the United States on June 24, 2023. *See* Exhibit 4, Plaintiff's May 24, 2023 Flight Booking.

76.     Plaintiff desires to obtain a religious exemption to the Travel's Ban's vaccination requirement and has previously attempted to receive a religious exemption from relevant

18

government officials, but despite repeated efforts, Plaintiff has never received a response to his request. *See* Exhibit 5, Plaintiff's Religious Exemption Request to Customs and Border Protection; *see also* Exhibit 6, Plaintiff's Religious Exemption Request to U.S. Embassy in the Hague, Netherlands.

77.     Regardless, any further attempts to receive a religious exemption would be futile. The CDC's website instructs that "there are no exceptions under the Presidential Proclamation and CDC's Amended Order for religious reasons or other moral convictions."[23]

78.     Plaintiff's inability to travel to the Netherlands for his work and re-enter the United States is also adversely impacting his career.

79.     Plaintiff's employer conducted a business meeting in the Netherlands on March 17, 2023 that was important for Plaintiff to attend.

80.     Accordingly, Plaintiff purchased a round-trip ticket from Nashville to Amsterdam on March 15, 2023, and returning back to the United States on March 29, 2023. *See* Exhibit 7, Plaintiff's March 15, 2023 Flight Booking.

81.     On February 28, 2023, Plaintiff requested to the Customs and Border Protection unit at John F. Kennedy International Airport and the U.S. Embassy in the Hague, Netherlands, that he be permitted to re-enter the United States with a religious exemption to the Travel Ban. *See* Exhibits 5 and 6. Plaintiff's legal counsel[24] followed up on these requests with numerous phone call attempts that were non-responsive. To date, Plaintiff has received no substantive response to his request other than the response from CBP at JFK to contact the CDC regarding his request.

---

[23] *See* CDC, *supra* note 4.

[24] Christina Xenides, Esq., *pro hac vice* request forthcoming.

82. Due to the Travel Ban, Plaintiff did not travel to the Netherlands for the March 17, 2023 business meeting.

## **CLASS ALLEGATIONS**

83. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

84. The actions and violations herein complained of impacts potentially thousands of persons subject to the Travel Ban and Challenged Order who are currently present in the United States, but are unable to leave without being precluded from entry.

85. Pursuant to FRCP 23(a), (i) the class is so numerous that joinder of all members is impracticable (with thousands of potential plaintiffs); (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class.

86. Pursuant to FRCP 23(b)(ii) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

87. Plaintiffs seeks a Plaintiff class ("**Class**"), consisting of those persons who: (i) are presently, as of the date of the filing this Complaint, or at any time while this action is pending, physically located within the United States; (ii) are subject to the Challenged Order, and not eligible for any of the available exemptions within the Challenged Order; and (iii) have a sincerely held religious belief against the Challenged Order's vaccination requirement that is substantially burdened by the requirements of the Challenged Order.

## COUNT I

### 42 U.S.C. § 2000bb-1(c) - VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT

88.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

89.     Plaintiff was granted an E2 visa and is lawfully residing in the United States. As such, he is subject to the Nation's laws and understands he must fulfill many legal obligations. He is also entitled to the benefits and protections of United States' law.

90.     After applying for and receiving a visa, Plaintiff uprooted his family to move to the United States with the understanding that he would receive legal protections.

91.     While non-citizens outside of the United States obviously are not afforded the legal protections of our laws, once an individual is within the Nation's borders and subject to its jurisdiction, they are entitled to legal protections, including the right to religious freedom. *Bridges v. Wixon,* 326 U.S. 135, 1455-56 (1945).

92.     Indeed, over the last half century, state and federal courts have held that even *illegal* immigrants residing within the United States possess the right to sue in tort[25] and contract,[26]

---

[25] *See, e.g., Arteaga v. Literski*, 83 Wis. 2d 128, 265 N.W.2d 148 (1978) (illegal aliens possess right to sue for personal injury).

[26] *See, e.g., Gates v. Rivers Constr. Co.,* 515 P.2d 1020 (Ala. 1973).

recover workers' compensation,[27] receive due process of law,[28] and seek relief under federal labor-protection statutes,[29] regardless of their unlawful presence within the Nation's borders.

93.     Pursuant to 42 U.S.C. 2000bb-1(a), "[i]n general Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b)."

94.     Pursuant to 42 U.S.C. 2000bb-1(b), the "Government may substantially burden a person's exercise of religion *only if* it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* (Emphasis added).

95.     Defendants have and continue to substantially burden Plaintiff's exercise of religion through the Travel Ban's vaccination mandate.

96.     The Travel Ban does not serve a compelling governmental interest, as evidenced by the multitude of secular exemptions it permits.

97.     Additionally, the Government has failed to apply Travel Ban's requirements to Plaintiff in the least restrictive means of furthering any compelling governmental interest the Government purportedly possesses.

98.     Moreover, there are multiple lesser restrictive methods of mitigating the spread of COVID-19, including testing before entry (a much more reliable indicator of active infection and

---

[27] *See, e.g., Commercial Standard Fire & Marine Co. v. Galindo*, 484 S.W.2d 635.637 (Tex. App. 1972) ("We conclude that a person residing in this State whose entry may be contrary to the immigration laws is not barred, by that reason alone, from receiving workmen's compensation benefits.").

[28] *See, e.g., Bridges v. Wixon,* 326 U.S. 135, 1455-56 (1945); *Hagl v. Stem*, 396 F. Supp. 779 (E.D. Pa. 1975) (equal protection of the law guarantees the right to sue to those who are physically injured, including undocumented aliens)

[29] *See, e.g., NLRB v. Sure-Tan, Inc.,* 583 F.2d 355 (7th Cir. 1978).

22

mitigation against COVID-19 than vaccination), and recognition of Plaintiff's natural immunity as satisfying the Travel Ban's immunization requirements.

99.     Accordingly, considering these factors, the Travel Ban violates Plaintiff's rights under RFRA.

100.    Pursuant to 42 U.S.C. 2000bb-1(c), "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.*

101.    Plaintiff is entitled to a declaration that Defendants violated his rights under RFRA to the free exercise of religion and an injunction against Defendants' policy and actions, including because such actions constitute ongoing irreparable harm.

102.    Additionally, Plaintiff is entitled to his reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT II

### 28 U.S.C. § 2201/2202 – VIOLATION OF PLAINTIFF'S FIRST AMENDMENT FREE EXERCISE RIGHTS WITH RESPECT TO PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS

103.    Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

104.    The First Amendment of the Constitution protects the "free exercise" of religion. Fundamental to this protection is the right to gather and worship. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts . . . [such as the] freedom of worship and assembly.").

105. As the Supreme Court has noted, "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508U.S. 520, 546 (1993).

106. Defendants' actions, as described herein, including hostility towards religious beliefs, as well as the creation of secular exemptions from its policies, while refusing to even allow the possibility for a religious exemption option, constitute a violation of the First Amendment's Free Exercise Clause. *See Roberts v. Neace*, 958 F.3d 409 (2020); *Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022); *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2421 (2022); *Fulton v. City of Philadelphia, Pennsylvania*, 141 S.Ct. 1868, 1876 (2021); and *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

107. Because the Travel Ban permits a long list of secular exemptions that are subject to individualized discretionary review, the Travel Ban fails the general applicability test. *See Fulton*, 141 S. Ct. at 1872 (quoting *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 884 (1990)). "'[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship without compelling reason.'").

108. Defendants' policy cannot withstand heightened scrutiny because it is both over-inclusive and under-inclusive relative to the state interests it purportedly attempts to achieve. There are countless options the Government could have utilized that constitute less restrictive means to avoid the conflict with Plaintiff's free exercise rights. However, instead of instituting a policy with the requisite precision to avoid conflict with non-citizens residing in the United States who hold religious objections to compulsory vaccination—like Plaintiff—Defendants deployed a blunt hammer and, in one stroke, obliterated every possibility for religious observance.

109.    Absent injunctive and declaratory relief against Defendants, Plaintiff will have been and will continue to be harmed. Plaintiff is entitled to a declaration that Defendants violated his rights under the First Amendment to the free exercise of religion and an injunction against Defendants' policy and actions under 28 U.S.C. § 2201, and to an injunction to redress ongoing violations of those rights under 28 U.S.C. § 2202.

## COUNT III

### ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 551 ET SEQ. – IMPROPER DELEGATION OF AUTHORITY – THE DELEGATION OF PRESIDENTIAL AUTHORITY TO THE CDC DIRECTOR IS *ULTRA VIRES*

110.    Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

111.    The CDC is an "agency" within the meaning of 5 U.S.C. § 551(1).

112.    The Challenged Order is a "rule" within the meaning of 5 U.S.C. § 551(4), because it is "designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency," specifically the CDC.

113.    Further, the Challenged Order is final action of the CDC within the meaning of the APA and is subject to review within the meaning of 5 U.S.C. § 704.

114.    Further, the issuance of the Challenged Order constitutes "agency action" within the meaning of 5 U.S.C. § 551(13), because it includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.

115.    The Challenged Order also constitutes a "sanction" within the meaning of 5 U.S.C. § 551(10) because it places a prohibition, requirement, limitation, or other condition affecting the freedom of a person.

116.     Pursuant to 5 U.S.C. § 702, Plaintiff is a person aggrieved by the Challenged Order, which is agency action, and is entitled to judicial review of the Challenged Order.

117.     The Challenged Order must be struck down as as they are not in accordance with Unites States law.

118.     While the President may have broad immigration-related authority, he lacks authorization to delegate those powers in this case to the CDC Director, which he has done.

119.     When Congress lawfully delegates responsibility to the executive branch, the executive's activities may be scrutinized by the judiciary to ensure that the executive acts within the scope of its proper authority. *Cf I.N.S. v. Chadha*, 462 U.S. 919, 953 n. 16 (1983) ("[executive action under legislatively delegated authority] is always subject to check by the terms of the legislation that authorized it; and if that authority is exceeded it is open to judicial review").

120.     "When an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority." *Chamber of Commerce of the United States v. Reich,* 316 U.S. App. D.C. 61, 74 F.3d 1322, 1327-28 (1996).

121.     "Even if the [agency head] were acting at the behest of the President, this does not leave the courts without power to review the legality of the action, for courts have power to compel subordinate executive officials to disobey illegal Presidential commands." *Id*; *see also Associated Builders & Contractors of Se. Texas v. Rung,* No. 1:16-CV-425, 2016 WL 8188655, at *5 (E.D. Tex. Oct. 24, 2016) (when "a federal agency operating within the Executive Branch [has] implemented the President's Executive Order by issuing…Guidance incorporated by reference in [a] new Rule," the "Executive Order may be challenged by Plaintiffs on both statutory and non-statutory grounds").

26

122.    The President's delegation of his congressionally granted powers under 8 U.S.C. §§1182(f) and 1185(a) powers to the CDC Director pursuant to 3 U.S.C. § 301 is *ultra vires* as it exceeds his statutory authority.

123.    Under 3 U.S.C. § 301, the President may "designate and empower the head of any department or agency in the executive branch" his properly granted executive powers, provided that such official has been "appointed by and with the advice and consent of the Senate." *Id.*

124.    In the Proclamation, the President delegated his authority to enforce the requirements of the Travel Ban to the CDC Director, who was not "appointed by and with the advice and consent of the Senate."

125.    These actions also violate the non-delegation doctrine. To comply with the nondelegation doctrine, a statute must delineate: (1) a general policy; (2) the agency to apply it; and (3) the boundaries of the delegated authority. *See Mistretta v. United States*, 488 U.S. 361, 372-73 (1989). The boundaries of the delegated authority must meaningfully constrain the Executive Branch's discretion. While the President has powers under 8 U.S.C. §§ 1182(f) and 1185(a), the CDC, and its head, as a non-Senate confirmed position, cannot be delegated those powers. Because the President delegated his immigration powers to the head of the CDC, he violated the non-delegation doctrine.

126.    Accordingly, because the delegation constituted an *ultra vires* delegation of authority, any action taken by the CDC Director in relation to the Travel Ban is unlawful.

127.    Pursuant to 5 U.S.C. § 706(2), Plaintiff seeks vacatur of the Challenged Order, and that it be held unlawful and set aside, because it is: (i) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in contravention of 5 U.S.C. § 706(2)(A); (ii) because it is contrary to constitutional right, power, privilege, or immunity, including the non-delegation

doctrine, in contravention of 5 U.S.C. § 706(2)(B); and (iii) because it is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in contravention of 5 U.S.C. § 706(2)(C).

128.    Plaintiff is further entitled to a declaration that Defendants violated his rights.

## **PRAYER FOR RELIEF**

Plaintiff seeks declaratory and injunctive relief for the violations of RFRA pursuant to 42 U.S.C. 2000bb-1(c) (including preliminary injunctive relief permitting the travel he currently seeks to undertake to the Netherlands and back), seeks certification of the FRCP 23(b)(2) injunctive relief class, seeks declaratory and injunctive relief pursuant to the First Amendment, and seeks declaratory relief and a vacatur of the Challenged Order pursuant to the APA.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants and provide Plaintiff with the following relief:

A.    Declaratory and injunctive relief against enforcement of the Challenged Order against the Plaintiff (including preliminary injunctive relief Plaintiff seeks permitting the travel he currently seeks to undertake to the Netherlands and back), pursuant to RFRA and the First Amendment;

B.    Declaratory and injunctive relief, including appropriate preliminary injunctive relief, against enforcement of the Challenged Order against the Class, pursuant to RFRA and the First Amendment;

C.    Declare that the Travel Ban is *ultra vires* as an unlawful delegation of authority under the DJA and APA;

D.    Vacatur of the Challenged Order under the APA;

E.  Grant Plaintiff reasonable attorneys' fees and costs under 42 U.S.C. § 1988 for his RFRA claims, and any other applicable authority; and

F.  For any such other and further relief as the Court deems equitable and just under the circumstances.

Dated: April 4, 2023.

Respectfully submitted,

GLASSMAN, WYATT, TUTTLE & COX, P.C.

*/s/ Edwin E. Wallis*

Edwin E. Wallis III (TN #23950)
26 North Second Street
Memphis, Tennessee 38103
Tel: (901) 527-4673
Fax: (901) 521-0940
E: ewallis@gwtclaw.com

SIRI & GLIMSTAD LLP

Aaron Siri, Attorney*
Walker D. Moller, Attorney*
Christina Xenides, Attorney*
745 Fifth Ave, Suite 500
New York, NY 10151
Tel: (212) 532-1091
Fax: (646) 417-5967
aaron@sirillp.com
wmoller@sirillp.com
cxenides@sirillp.com

Christopher Wiest, Attorney*
25 Town Center Blvd., Suite 104
Crestview, KY 41017
Tel: (513) 257-1895
Fax: (859) 495-0803
chris@cwiestlaw.com

Attorneys for Plaintiffs

*Pro hac vice requests forthcoming*

29

## VERIFICATION OF GERARD VAN DEN BOSCH

I, Gerard van den Bosch, a lawful resident of the state of Tennessee by way of a validly issued E-2 Visa, have read the foregoing Complaint and know the contents thereof as to myself, that the same is true to my own knowledge and as to all other matters on information and belief and I believe them to be true. I verify under penalty of perjury that the foregoing is true and correct.

_____

Gerard van den Bosch